FRANDORA REALTY, INC., v. GRINNELL BROTHERS, INC.

1. ACCORD AND SATISFACTION—ELEMENTS—DISPUTE—RENT.

One element of an accord and satisfaction is a dispute between debtor and creditor as to the amount due; hence payment of rents by lessee in accordance with its interpretation of a lease before an audit could not operate as an accord and satisfaction where there was in fact no dispute and no reason for one until after the audit had disclosed to lessor that lessee was not including certain items in computing the rent.

2. SAME—RENTS—DISPUTE.

Payment of rents by a lessee in accordance with its interpretation of a lease, with an additional payment as a concession on one item out of several items for which the lessor had demanded additional rent after an audit of lessee's books, did not amount to an accord and satisfaction where there was no clear, full, and explicit statement by lessee that the additional payment was in full satisfaction for all rent due.

3. CONTRACTS—LEASES—RENTS—ADDITIONAL RENTS—WAIVER.

Acceptance by lessor of monthly rent payments from lessee accompanied by reports of gross and net sales, under a lease in which part of the rent was computed by reference to gross sales as defined in the lease, did not amount to a waiver of lessor's right to demand additional rent after an audit had disclosed that lessee was not reporting certain items which lessor contended should be included in gross sales, where the reports did not fully disclose what items lessee was deducting from gross sales, since waiver is an intentional relinquishment of a known right.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Accord and Satisfaction § 26 *et seq.*
[2] 32 Am Jur, Landlord and Tenant § 153.
[3, 4] 32 Am Jur, Landlord and Tenant § 156.

4. Same—Leases—Rent—Additional Rents—Right to Audit—Estoppel.

> Lessor's failure to audit books of lessee until 7 years after inception of lease which gave lessor the right to audit lessee's books if it was not satisfied with any monthly or annual statement by lessee showing lessee's gross sales, on which part of rent was based, did not estop lessor from demanding additional rent it claimed to be due as a result of the audit, where lessee's payments were based on its own interpretation of the meaning of gross sales as used in the lease with knowledge of the facts, and lessee was not misled or deceived by lessor's failure to audit sooner.

Appeal from Ingham, Coash (Louis E.), J. Submitted Division 2 November 6, 1968, at Lansing. (Docket No. 3,861.) Decided December 23, 1968. Leave to appeal denied March 11, 1969. See 381 Mich 806.

Complaint by Frandora Realty, Incorporated, a Michigan corporation, against Grinnell Brothers, Inc., a Michigan corporation, for back rent under a lease. Judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*John L. Collins,* for plaintiff.

*Leland W. Carr,* for defendant.

Quinn, J. Plaintiff-landlord filed this action against defendant-tenant to recover rent allegedly due under the percentage of gross sales provision of a written lease executed by the parties May 9, 1955. The trial court found there was an accord and satisfaction, plaintiff had waived its right to collect the rents claimed, and plaintiff was estopped from collecting such rents. Plaintiff appeals from a judgment of no cause for action.

The lease is a printed form with blank spaces to be filled in according to the agreement of the par-

ties, but in this instance, the printed provisions
with respect to term and rental were not used.
Instead, just above the first line of paragraph 2 deal-
ing with term and above the first line of paragraph
3 dealing with rental, the words "see rider" were
typed, and none of the blank spaces of paragraphs
2 and 3 were filled in. A typewritten rider was at-
tached to the lease covering the agreement as to term
of 15 years with renewal option and minimum
monthly rental plus the percentage of gross sales
provision.

Paragraph 4 of the lease defines gross sales as,

" 'Gross sales' is hereby defined to mean and in-
clude the entire amount of all sales of every kind
and character, and all revenues from all depart-
ments and services made in, upon and from the here-
in demised premises by Tenant or any other person
or persons, both for cash and on credit, regardless
of collections in case of the latter, including all or-
ders taken and merchandise sold from the herein
demised premises and filled or delivered from any
other store or place, including mail and telephone
orders received or filled from the demised premises
and all deposits not refunded to purchasers. Gross
sales shall not include and there shall be excluded
therefrom:   (a) returns and refunds to customers;
(b) the amount of any 'sales tax' so-called collected
by Tenant or any other tax which Tenant may now
or hereafter be required to pay or collect by any fed-
eral, state, municipal or local authority as a sales
tax; and (c) interstore transfers of merchandise at
Tenant's cost to other stores owned by or affiliated
with Tenant."

Paragraph 5 of the lease specifies the records to
be kept by the tenant as,

"Tenant agrees to keep full and accurate books
of all sales and business transacted in accordance

with good accounting practice. Landlord shall have the right at all reasonable times to examine such books and records of Tenant relating to sales and business transacted upon the leased premises in order to determine the correct amount or amounts due Landlord. Tenant shall furnish to Landlord a true and accurate statement on or before the twentieth of each month of the gross sales transacted by Tenant and any sub-lessees during the preceding month and shall, on or before February 1st, furnish a true and accurate statement, verified by independent accountants of good standing of such gross sales during the preceding calendar year. Tenant further agrees to furnish to Landlord each month a copy of its Michigan Sales Tax Return and Tenant hereby waives the confidential information covered in Section 20 of the Sales Tax Act, 167 P.A. 1933, as amended, and grants to Landlord permission to examine the sales tax records on file in the office of the Department of Revenue for the State of Michigan, or at such other place where such records may be on file, as they pertain to the within demised premises, for the sole purpose of verifying the correctness of the report of gross sales submitted."

Paragraph 6 of the lease provides for the landlord's right to audit as follows:

"In the event Landlord is not satisfied with any monthly or annual or other statement submitted to it by Tenant, Landlord shall have the privilege of having an audit made of the books and records pertaining to the business of Tenant in the demised premises. Such audit shall be made by a certified public accountant selected by Landlord and in the event said audit shall show that Tenant has reported and paid the full amount required as 'minimum rental' and 'percentage rental', then the expense of such audit shall be borne by Landlord, but in the event that said audit shall show that Tenant failed to report the correct amount of gross sales and a

shortage in excess of one per cent (1%) in gross sales for any annual period, then the expense of said audit shall be paid by Tenant hereunder as additional rent payable upon the next rental payment date. In the event that such audit discloses a deficiency in the amount of rent payable hereunder by Tenant, the amount of such deficiency shall be promptly paid together with interest therein at the rate of six per cent (6%) per annum from the date when said rental was payable until the date of actual payment."

Defendant took possession December 1, 1955 and regularly filed the required monthly and annual reports together with letters of transmittal and paid the additional rental established by such reports. The form of the monthly reports was,

"Gross sales ........................... xxxx
Less:  trade ins, returns and allowances ..   xxx
_____
Net sales .............................. xxxx"

Percentage rental was computed on net sales. The annual reports were recapitulations of the monthly reports. This procedure still prevails.

About June 7, 1962, plaintiff requested and obtained an audit of defendant's books and records, and the audit was completed about June 25, 1962. The audit disclosed that defendant had not included in gross sales trade-ins, repossessions, outside service sales, merchandise sold at special discount and bad debt charge-offs. In response to plaintiff's request that these items be included in gross sales, defendant denied liability thereon except bad debt charge-offs. Defendant admitted the latter should have been included in gross sales and corrected its percentage rental payments accordingly. About February 4, 1963, plaintiff filed this action,

It is apparent that this dispute arose because the parties to the lease placed different interpretations on the definition of gross sales. Unfortunately, the trial court did not reach the question of what is and what is not included in gross sales, so the question is not before this Court. The questions to be resolved here are: Was there an accord and satisfaction? Has plaintiff waived its right to collect the rent claimed? Is plaintiff estopped from collecting the additional rent claimed?

In *Shaw* v. *United Motors Products Co.* (1927), 239 Mich 194, 196, the Supreme Court stated:

"If the tender is in full satisfaction of an unliquidated claim, the amount of which is in good faith disputed by the debtor, and the creditor is fully informed of the condition accompanying acceptance, an accord and satisfaction is accomplished if the money so tendered is retained."

In the case at bar, there was no dispute as to the amount due from defendant to plaintiff until the audit, nor does the record indicate any reason why plaintiff should have disputed the amount due prior to audit. There was no accord and satisfaction with respect to the amount due prior to audit.

The reporting and payment procedure followed by defendant after audit remained the same. There never was a clear, full and explicit statement by defendant that it tendered these percentage rental payments in full satisfaction of all rent due. *Durkin* v. *Everhot Heater Company* (1934), 266 Mich 508. Defendant did no more than continue to perform according to its interpretation of the term "gross sales", plus its concession that bad debt charge-offs were properly included in gross sales. There was no accord and satisfaction on this record.

This holding is not contrary to *Davis* v. *Kramer Bros. Freight Lines, Inc.* (1964), 373 Mich 594, re-

lied on by defendant. In *Davis,* all payments were accepted while the amounts of payment were in dispute and the checks tendered in payment disclosed all deductions made by the drawer.

Defendant contends that the trial court properly found plaintiff had waived its right to question the validity of the reports and cites *Bailey* v. *Jones* (1928), 243 Mich 159, 162, in support of this position. *Bailey* held:

"Waiver is the intentional relinquishment of a known right. * * * The usual manner of waiving a right is by acts which indicate an intention to relinquish it * * *, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive."

To bring itself within the *Bailey* rule, defendant assumes plaintiff had all of the facts from the monthly and annual reports, and therefore there was an intentional relinquishment of a known right. This assumption is invalid. The reports did not fully disclose what items defendant was deducting from gross sales. The audit did, and defendant conceded that one item disclosed by the audit should not have been deducted, namely: bad debt charge-offs. Under *Bailey,* there was no waiver and *Book Furniture Company* v. *Chance* (1958), 352 Mich 521, is inapposite; it involved election of mutually exclusive remedies.

By the lease, defendant agreed plaintiff could examine defendant's books and records at all reasonable times; that plaintiff could audit the books and records if not saitsfied with any monthly, annual or other statements submitted by defendant; and that plaintiff could collect any deficiency in rent disclosed by the audit. Defendant did not contest the right to audit. Defendant has conceded that the audit dis-

closed one error in its reports. Defendant is in no position to assert waiver.

In *Shean* v. *United States Fidelity and Guaranty Company* (1933), 263 Mich 535, 541, the Supreme Court said:

"There can be no estoppel where one is not deceived or misled, but acts upon his own judgment and with knowledge of the facts."

Here defendant acted upon its own interpretation of the term "gross sales" with knowledge of the facts. In view of the terms of the lease, defendant was not deceived or misled by plaintiff's failure to audit until it did. There was no estoppel.

We consider defendant's assertion of latent ambiguity at the least to be frivolous.

Reversed and remanded for trial of the issues of what "gross sales" means in this lease and what sales and revenues of defendant should be included therein. Plaintiff may recover costs.

McGregor, P. J., and Letts, J., concurred.